# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA DIANE JURASINSKI, | |
| Plaintiff, | CIVIL ACTION |
| | NO. 18-4213 |
| v. | |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**Henry S. Perkin, M.J.**                                                           **October 31, 2019**

## MEMORANDUM OPINION

Plaintiff, Cynthia Diane Jurasinski ("Plaintiff"), brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Defendant"), denying her claim for disability insurance benefits ("DIB") provided under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-433. Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. § 405(g). Presently before this Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review (ECF No. 16) filed December 25, 2019; Defendant's Response to Request for Review of Plaintiff (ECF No. 17) filed March 26, 2019; and Plaintiff's Reply to Defendant's Response to Plaintiff's Request for Review (ECF No. 18) filed April 5, 2019. For the reasons that follow, Plaintiff's Request for Review will be **DENIED** and the decision of the Commissioner of Social Security be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on March 19, 2015, alleging disability since October 1, 2014. (Record at 16, 114, 362.) Plaintiff claims disability as a result of arthritis, restless leg syndrome, tendonitis, asthma, and blindness in the right eye. (Record at 106, 114.) Plaintiff's earnings record shows that she has acquired sufficient quarters of coverage to remain insured through September 30, 2016, which is referred to as the date last insured. (Record at 18, 299.) Thus, in order to be eligible for DIB benefits, Plaintiff must prove that she became disabled on or before September 30, 2016. (Record at 18, Finding No. 1.)

The state agency initially denied Plaintiff's claims on June 23, 2015, and she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Record at 117-125.) A hearing was held on July 12, 2017 at which Plaintiff, who was represented by counsel, appeared and testified. (Record at 29-71). Daniel Rappuci, a vocational expert ("VE"), also appeared and testified at the July 12, 2017 hearing. (Record at 53-55, 56-61, 65-68.)

On September 1, 2017, after having considered evidence of Plaintiff's impairments, the ALJ issued an unfavorable decision in which she found that Plaintiff, given her age, education, work experience, and residual functional capacity ("RFC"), was capable of performing past relevant work or, in the alternative, jobs that existed in significant numbers in the national economy. (Record at 13-24, Finding Nos. 1-7.) Thus, the ALJ concluded that Plaintiff was not disabled. (Record at 24, Finding No. 7.) Plaintiff timely requested review of the ALJ's decision on September 8, 2017. (Record at 242-44.) The Appeals Council denied Plaintiff's Request for Review on July 26, 2018. (Record at 1-7.) Thus, the ALJ's decision, dated February 3, 2017, became the final decision of the agency. (Record at 1.)

Plaintiff initiated a civil action on October 1, 2018, seeking judicial review of the Commissioner's decision that she was able to perform a significant number of jobs in the national economy, and thus was not entitled to DIB. (ECF No. 2.) Plaintiff filed a request for review February 25, 2019. (ECF No. 17.) The Commissioner filed his response on March 26, 2019, and Plaintiff filed a reply brief on April 5, 2019. (ECF Nos. 17, 18.)

## II. LEGAL STANDARD

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. Richardson v. Perales, 402 U.S. 389, 407 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). See also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993). Substantial evidence is "more than a mere scintilla of evidence," but may be less than a preponderance of the evidence. Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Therefore, the issue before this Court is whether there is substantial evidence to support the Commissioner's final decision that Plaintiff is "not disabled" and is capable of performing jobs that exist in significant numbers in the national economy.

Though the Court's duty is "to scrutinize the record as a whole to determine whether the conclusions reached [by the ALJ] are rational," Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979), the Court may not undertake de novo review of an ALJ's decision, nor may it re-weigh the evidence of record. Williams, 970 F.2d at 1182 (A reviewing court is not

3

"empowered to weigh the evidence or substitute its conclusions for those of the factfinder."); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). However, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984). This Court's review of legal questions presented by the Commissioner's decisions is plenary. Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [him] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, he will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," he will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether he can perform work he has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform his past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work which exists in the national economy. See id. § 404.1520(b)-(f).

Schaudeck, 181 F.3d at 431-32. The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience and residual functional capacity. Poulos v. Comm'r of Social Sec.,

4

474 F.3d 88, 92 (3d Cir. 2007). RFC is defined as the most an individual can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

III. **BACKGROUND**

Plaintiff, born on August 16, 1958, was fifty-six years old at the time of her alleged disability onset date. (Record at 23, 106.) She completed high school but had no additional vocational training, licenses, or certificates in any field. (Record at 23, 303.) With respect to work history, Plaintiff testified that she last worked in September 2016, taking care of her mother-in-law as a home attendant. (Record at 33-35.)[1] As a full-time caregiver, Plaintiff's responsibilities involved assisting her mother-in-law with bathing, dressing, meals, medications, errands, and doctors' appointments. (Record at 33, 36-37.) Prior to her work as a caregiver, Plaintiff's relevant work history included employment as an attendant at an elementary school and as a home attendant at a nursing home. (Record at 37-39, 53-56.) Plaintiff lives with her husband and alleges disability since October 1, 2014. (Record at 34, 39.)

During the hearing that took place on July 12, 2017, Plaintiff's counsel summarized her alleged impairments as: neck pain stemming from arthritis, a total knee replacement of the left knee, vision loss from a detached retina with some scarring in the right eye, tendinitis in the wrists, and arthritis in the right shoulder. (Record at 32-33.) Similarly, when questioned as to why believes she cannot work, Plaintiff stated that she has trouble "standing for lengthy periods of time" due to her full knee replacement and cannot "lift more than 20 pounds because [she] could lose [her] sight in [her eye]." (Record at 39.) She explained that "the retina

---

[1] Though the Plaintiff testified that she earned $800.00 per month taking care of her mother-in-law after the alleged onset date, October 1, 2014. the ALJ found that these earnings fall well below substantial gainful activity levels. (Record at 18.)

5

can detach again if… there's a lot of pressure in [her eye]…" however, responded that this issue does not cause any problems with her ability to see things. (Record at 39-40.)[2]

In response to further questioning from the ALJ regarding her eye impairments, Plaintiff explained that she relies on her left eye to see as she can only see "outlines of everything" out of her right eye. (Record at 43-44.) Plaintiff specified that, if she were to cover her left eye, her vision would "be all blurry" and she could not "see things up close." (Record at 44.) While Plaintiff reports no headaches related to her eye issues, she does note that, when bending over, she will "get really lightheaded," "feel like [she's] going to faint," and experience painful pressure in her eye if she gets up too fast. (Record at 44, 50.) At the end of the hearing, Plaintiff explained that, although she has blurry vision in her right eye, she can drive safely and see road signs, stoplights, pedestrians, road hazards, and potholes. (Record at 69-70.) Plaintiff further responded that the fact that her right eye is blurry does not impact her ability to see things as her left eye "got stronger." Id.

At the hearing, Plaintiff also described pain in both the right and left knees, explaining that she has trouble going down stairs and has to go "down sideways." (Record at 40, 49.) Nevertheless, Plaintiff testified that she can stand for up to four hours at one time before she would need to sit down. (Record at 45.) In response to the ALJ's questioning, Plaintiff stated that she has no issues with sitting, but does use a cane for ambulation between thirty to fifty percent of the day when she leaves the house. (Record 48, 51-53.) She further testified that, while her neck was "doing pretty well," her shoulder was sore which affected her ability to reach and lift. (Record at 48.) In spite of this, Plaintiff maintained that she can lift twenty pounds. Id.

---

[2] Plaintiff explained, "I can see, but I just have to not do a lot of one thing, like looking at a computer or looking at anything for a lengthy period of time; then things start getting fuzzy, because I'm only working with my one eye, and I just have to go get away from it, and then it'll clear up again." (Record at 40.)

6

The VE then classified Plaintiff's past work as an attendant at a children's institution and as a home attendant as medium, semi-skilled work with an SVP level of 3.[3] (Record at 56-57.) The ALJ then asked the VE whether a hypothetical individual capable of no more than medium work could perform Plaintiff's past work. (Record at 58.) The VE responded that the hypothetical individual could perform the job of a children's institution attendant, as generally performed and as actually performed by the Plaintiff, as well as the job of a home attendant, as generally performed at medium. (Record at 58.) The ALJ then altered the hypothetical, adding the following restrictions for the individual: avoid concentrated exposure to extreme heat, cold, dust, odors, wetness, gases, and fumes; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs. (Record at 59.) The VE opined that none of these restrictions would preclude Plaintiff's past work. Id. However, when the ALJ included a final modification that the hypothetical individual would be limited to light work, adding "only occasional postural, and no kneeling or crawling," the VE testified that none of the Plaintiff's past work would remain. Id.

Considering all of the environmental and postural limitations in the final hypothetical above, the ALJ asked the VE if there existed jobs at the medium level. (Record at 60.) The VE opined that there are a number of jobs that would meet that hypothetical including: a warehouse worker, representing about 450,000 jobs in the national economy; a cleaner, industrial, representing approximately 250,000 jobs in the national economy; and a hand packager, representing around 275,000 jobs in the national economy. (Record at 61.)

---

[3] The VE specified that, while both these jobs are generally performed at medium, he classified Plaintiff's actual work as a children's institution attendant "as performed" at light and as a home attendant "as performed" at heavy.

7

In response to questioning by Plaintiff's attorney, the VE testified that the industrial cleaner job would not be affected by the fumes and "other extremes" that the ALJ included in her hypothetical, explaining that there would be no reason a person would "have to be in any place that would be toxic or unsafe." (Record at 65-66.) The VE did indicate that, if the person was limited to lifting no more than twenty pounds, she would be limited to light work rather than medium (Record at 66.) Additionally, if the hypothetical individual required occasional use of a cane to ambulate, the VE stated that none of the medium jobs he identified (including Plaintiff's past work) would be applicable. (Record at 67.) Finally, the VE, in response to counsel's questioning, opined that being off task 15% of the workday or absent greater than one day per month would exceed any employer's tolerable limit for keeping a person employed. (Record at 67-68.)

In addition to reviewing the transcript of the administrative hearing, this Court has independently and thoroughly reviewed the 1,289-page administrative record. We will not further burden the record with a detailed recitation of the facts. Rather, we incorporate relevant facts in our discussion below.

## IV.  ALJ DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

Plaintiff's alleged disability involves an inability to work because of arthritis, restless leg syndrome, tendonitis, asthma, and blindness in the right eye. (Record at 106, 114.) The ALJ, however, proceeded through the sequential evaluation process and determined that Plaintiff was not disabled as a result of her impairments. (Record at 13-24.)

At step one, the ALJ initially noted that Plaintiff had not engaged in any substantial gainful activity from October 1, 2014, the alleged onset date, through her date last insured, September 30, 016. (Record at 18, Finding No. 2.)[4]

At step two, the ALJ found that Plaintiff had the following severe impairments: "dysfunction of major joint and asthma." (Record at 18-19, Finding No. 3.)

At step three, the ALJ determined the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and therefore, could not establish her entitlement to benefits on that basis. (Record at 19, Finding No. 4.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RCF") to perform medium work with the following limitations: "avoid concentrated exposure to extreme heat, cold, dust, odors, wetness, gases, fumes, and humidity; no climbing ladders, ropes, or scaffolds; and occasionally climbing ramps and stairs." (Record at 19-20, Finding No. 5.) In view of the testimony of the VE, the ALJ found that Plaintiff was able to perform her past relevant work experience as an attendant of a children's institution and as a home attendant. (Record at 21, Finding No. 6.)

While the ALJ found the Plaintiff capable of performing past relevant work, she offered alternative findings for step five that there existed jobs in significant numbers in the national economy that Plaintiff could also have performed. (Record at 22-23, Finding 6.) These jobs included "warehouse worker," "cleaner, industrial," and "hand packager," representing,

---

[4] Though the Plaintiff testified that she earned $800.00 per month taking care of her mother-in-law after the alleged onset date, the ALJ found that these earnings fall well below substantial gainful activity levels. (Record at 18.)

cumulatively, 975,000 jobs in the national economy. (Record at 23, Finding 6.) Thus, a finding of "not disabled" was appropriate. (Record at 24.)

In her Request for Review, Plaintiff asserts that the ALJ erred because: (1) the decision lacks any guidance from a health care professional, (2) the ALJ failed to sufficiently consider facts that would implicate the application of the Medical-Vocational Guidelines, and (3) the ALJ failed to support her rejection of a treating source opinion, Dr. Geidel. (Pl. Br. at 1, 7.) The issues before this Court, however, are limited to whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence and whether the ALJ applied the proper legal standards in evaluating a claim of disability.

This Court has reviewed the various sources of medical evidence, the submissions of counsel, and the testimony at the ALJ hearing. Based on this Court's independent and thorough review of the record and for the reasons that follow, we find that the ALJ has provided appropriate and adequate support for her decision. Accordingly, we conclude that the ALJ's decision is supported by substantial evidence of record and Plaintiff's Request for Review is denied.

## V. **DISCUSSION**

Ultimately, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC"), to perform medium work, including past relevant work as a children's institution or home attendant, with the additional limitations described in her decision. (Record at 18-24.) Plaintiff contends that substantial evidence does not support the ALJ's decision because it "lacks any guidance from a health care professional." (Pl. Br. at 7.) Plaintiff maintains that the ALJ's decision to afford the opinion of the treating physician little weight "resulted in an insufficient consideration of facts that would implicate the application of the Medical-Vocational

Guidelines." Id. Defendant counters that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled. (Def. Br. at 4.) Defendant explains that the ALJ appropriately evaluated the treating physician opinion in the context of the entire record, discounted it for reasons she explained in her decision, and used the record evidence to formulate an RFC supported by substantial evidence. Id. at 10.

### a. Whether Substantial Evidence Supports the RFC Assessment

Pursuant to the Commissioner's regulations, RFC refers to the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a). The RFC assessment must be based upon all relevant evidence, including medical records, medical source opinions, and a description of Plaintiff's own symptoms. Id. When evaluating medical opinions, the ALJ will consider factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 404.1527(c).[5] "The law is clear… that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating source's opinion may be rejected "on the basis of contradictory medical evidence" or if it is unsupported by sufficient clinical data. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); See also Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).

Contrary to Defendant's assertion that an RFC analysis is not supported by substantial evidence without "substantial support from a professional" (Pls. Reply Br. at 3), this Court has held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174

---

[5] The Court notes that 20 C.F.R. §§ 404.1527 and 416.927 apply because Plaintiff's claims were filed before March 27, 2017.

F. App'x 6, 11 (3d Cir. 2006); see also Mays v. Barnhart, 78 F. App'x 808, 813 (3d Cir. 2003) (rejecting the argument that the ALJ erred in discounting the only medical opinion of record). When rejecting a treating physician's opinion however, the ALJ is required to "give some indication of the evidence he rejects and his reason(s) for discounting that evidence." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). That is, an ALJ must explain on the record his or her reasons for disregarding a physician's opinion. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). In her RFC evaluation, when determining how much weight to give Dr. Geidel's opinion, the ALJ provided an adequate explanation of her reasons to afford the opinion "little weight."

Dr. Zachary Geidel, Plaintiff's treating physician, produced a Medical Source Statement in which he identified Plaintiff's physical impairments as "ongoing pain, difficulty with ambulation, [left total] knee replacement, visual impairment in [right eye], "legally blind."" (Record at 1014.) He opined that, in an eight-hour working day, Plaintiff could: never climb; infrequently stand, walk, and stoop and; occasionally sit. Id. Dr. Geidel noted that Plaintiff was capable of frequently lifting up to five pounds, occasionally lifting up to twenty pounds, but never capable of lifting over twenty pounds. Id. He further indicated that Plaintiff could frequently use hands for fine and gross manipulation and raise both arms over her shoulder. Id. Dr. Geidel finally noted that Plaintiff would: be off-task sixty percent of the workday, need to elevate her legs every three to four hours for ten to fifteen minutes, need to take unscheduled breaks, and require the use of an assistive device to ambulate. (Record at 1015.) While Dr. Geidel characterized Plaintiff's pain level as "moderately severe," he did not indicate that Plaintiff's above limitations have lasted nor were expected to last for twelve consecutive months or longer. Id.

The ALJ, relying on Plaintiff's testimony as to her day-to-day activities and the medical record, sufficiently explains why she chose to give Dr. Geidel's assessment "little weight." First, the ALJ notes that Plaintiff's testimony as to her daily activity level is not consistent with Dr. Geidel's evaluation. (Record at 21.) Plaintiff's robust activities of daily living, according to her self-completed functional report, include: preparing full course meals, completing household chores, driving, shopping in stores, handling finances independently, watching television, reading, and spending time with family and friends. (Record at 321-30.)[6] As the ALJ highlights, Plaintiff also worked as a caregiver for her mother-in-law for approximately two years after the alleged onset date, assisting with bathing, dressing, preparing meals, medications, errands, and taking her mother-in-law to appointments. (Record at 21.)

Second, the ALJ explains that "the medical record documenting largely benign clinical presentations and effective treatment does not support this opinion." Id. With respect to Plaintiff's physical impairments related to her left knee, the ALJ identified an x-ray following Plaintiff's total knee replacement that showed satisfactory position of the knee replacement. (Record at 20.) The ALJ further notes that Plaintiff participated in physical therapy for knee, shoulder, neck, and back pain, and January 2015 and August 2016 x-rays of the left hip showed no degenerative changes. Id. Reviewing the record as a whole, the ALJ observes that, while at times mildly diminished auscultation, tenderness and swelling in the left hip, antalgic gait, and tenderness in the left knee were mentioned, this was offset by evidence of effective treatment and otherwise benign presentations noted elsewhere in the record. (Id. citing Record at 482, 564-65, 572-73, 683, 1032, 1057-58 (treatment notes dated from October 2014 through September 2016 by Dr. Geidel and others recording entirely normal physical and mental examination findings);

---

[6] The ALJ cites this functional report in her opinion.

13

1121 (June 2016 post-operative examination by Dr. Geidel treatment note recording that Plaintiff was "[d]oing well overall"); 1038 (August 2016 treatment note by Dr. Geidel recording normal hand and arm examination findings, despite complaints of right wrist/thumb pain); 1044 (July 2016 treatment note by Dr. Geidel recording an antalgic gait and mild hip swelling and tenderness, but normal range of motion, and normal hip and knee strength); 1063-64 (May 2016 treatment note by Dr. Geidel recording stiffness and pain in the left knee and an antalgic gait, but no clubbing, cyanosis, or edema, and no other musculoskeletal examination findings)).

Thus, the ALJ did not reject Dr. Geidel's opinion based upon her own lay opinion. Instead, she rejected Dr. Geidel's conclusion regarding plaintiff's functional abilities based upon its inconsistency with Plaintiff's testimony as to her daily activities and the medical evidence of record. Because Dr. Geidel's opinion was inconsistent with other medical evidence in the record, the ALJ was not required to give it controlling weight. See 20 C.F.R. §§ 404.1527, 416.927. Plummer, 186 F.3d at 429. Even assuming, arguendo, the ALJ had afforded full weight to Dr. Geidel's opinion, Plaintiff would not necessarily be entitled to benefits. As noted above, Dr. Geidel did not opine that Plaintiff's alleged disabling limitations have lasted or were expected to last for twelve consecutive months or longer.[7] (Record at 1015.)

The evidence highlighted by the ALJ supports her finding as to Plaintiff's residual functional capacity. Plaintiff essentially seeks to have this court re-weigh the evidence and come to a different conclusion. However, a reviewing court may not set the Commissioner's decision aside if it is supported by substantial evidence, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). See Chandler, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual

---

[7] A disabling impairment, for the purposes of DIB, is one that is expected to result in death or last at least 12 months. See 42 U.S.C. § 423(d)(1)(A).

14

determinations."); see also Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). In the case at bar, substantial evidence supports the ALJ's assessment of the opinion evidence.

### b. Other Claims

Plaintiff claims that the ALJ erred in rejecting Dr. Geidel's upper extremity limitations "without guidance from a healthcare professional." (Pl. Br. at 11.) This Court first notes that Dr. Geidel did not indicate any upper extremity limitations in his Medical Source Statement. (Record at 1014.) Plaintiff points to medical treatment notes in which Dr. Geidel assessed right De Quervain's tenosynovitis of the right thumb. (P. Br. at 11.) However, the ALJ acknowledged these records in her opinion and identified treatment records in which injections helped with the symptoms. (Record at 21.) She further noted that Plaintiff was able to "use a touch screen phone without any limitation in her right hand." Id.

Plaintiff further avers that the ALJ's RFC analysis is incorrect because it fails to take into consideration a May 4, 2017 right knee x-ray. (P. Br. at 10.) This x-ray occurred after the relevant time period for this case. Further, an ALJ's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. Appx. 130, 133 (3d Cir. 2004), but the ALJ must consider all pertinent medical and non-medical evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000). As discussed above, the ALJ points to numerous medical records to support her RFC finding that Plaintiff is capable of medium work.

## VI. CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's Request for Review is **DENIED**. An appropriate Order follows.

BY THE COURT:

*/s/ Henry S. Perkin*
HENRY S. PERKIN
United States Magistrate Judge